## 10619.

### M. C. JOHNSON MOTOR CO. v. PAYNE, DIRECTOR GENERAL.

#### (107 S. E. 252)

1. CARRIERS—NEGLIGENCE OF SHIPPER A DEFENSE IN ACTION AGAINST TERMINAL CARRIER.—Negligence of shipper in loading goods to be carried in interstate commerce was a good defense in an action against terminal carrier for damages.

2. CARRIERS—UNDER GENERAL DENIAL TERMINAL CARRIER COULD SHOW NEGLIGENCE OF CONSIGNOR IN LOADING.—In an action against terminal carrier for damage to shipment, the defendant under a general denial could have shown that the injury was not caused by the defendant, but by the negligence of the consignor in loading the shipment.

3. CARRIERS—PRESUMPTION AS TO SHIPPER'S LOAD SAME AS TO SHIPPER'S COUNT.—The rule as to shipper's load is the same as shipper's count, and there is a prima facie presumption that goods loaded by shipper in interstate commerce were as described and were properly loaded.

4. CARRIERS—MEASURE OF DAMAGES FOR INJURIES TO AUTOMOBILES IN TRANSIT.—Where motorcar company shipped cars to themselves, and title did not pass to purchaser until shipment arrived and draft was paid, the rights of the purchaser as to injuries to the car while in

shipment were no different than the rights of the motorcar company, and it could recover no more than the motorcar company could have recovered if it had sued, which was what purchaser had already agreed to pay, less the value of the injured cars.

Before Whaley, J., County Court, Richland, 1920. Reversed and new trial ordered.

Action by M. C. Johnson Motor Co. against Jno. Barton Payne, Director General of Railroads, for damages in transit to shipment of automobiles. From judgment for plaintiff the defendant appeals.

*Messrs. Barnett & McDonald,* for appellant, cite: *Acts of the shipper is one of the recognized exceptions to liability of carrier of goods:* 4 R. L. C. 702 et seq; Id. 732. *In cases where goods are shipped in sealed cars:* 4 R. C. L. 733: 99 S. C., 198; 39 Stat. L. 541, Fed. Stat. Ann. 1918, Supp., 77. *Defense available against consignor is available against consignee, as bill of lading is sole measure of liability under Carmack Amendment:* 226 U. S. 491. *Presumption of damage by terminal carrier:* 31 L. R. A. (N. S.) 102. *Effect of notation on bill of lading of "Shipper's Load and Count:"* 99 S. C. 198. *Plaintiff built a presumption on a presumption:* 10 R. C. L. 870. *And such presumption of damage by terminal carrier has been abolished at least so far as it affects interstate shipments:* Roberts Fed. Liab. of Carriers, Vol. 1, p. 601. *And cannot exist in the face of the Carmack Amendment:* 237 U. S. 597. *Fixing measure of damage as retail market price at destination allowed recovery of profits:* 4 R. C. L. 934.

*Messrs. Graydon & Graydon* and *A. J. Bethea* for respondent. *Mr. W. N. Graydon.* Oral argument.

May 10, 1921.

The opinion of the Court was delivered by Mr. Justice Fraser.

The Briscoe Motor Company shipped a carload of automobiles containing five cars to itself from Jackson, Mich., to Columbia, S. C., order notify the M. C. Johnson Motor Company at Columbia, S. C. The bill of lading was sent to a bank in Columbia with a draft attached for the price of the cars. The plaintiff paid the draft and demanded the automobiles from the Director General of Railroads, who was then operating the Southern Railway, the final carrier. When the car was opened it was found that every car was damaged considerably. At first the plaintiff refused to take the damaged cars, but afterwards did so and brought this action for the damages to the automobiles.

The defendant admitted the incorporation of the plaintiff, and said that the Director General was operating the Southern Railway, but denied each and every other allegation of the complaint. Before the trial of the case the defendant moved to amend its answer by alleging that the car had been improperly loaded by the consignor, and that the damage was caused by improper loading. The bill of lading had plainly written on it the words, "Shipper's load and count." The trial Judge ruled as follows:

"The plaintiff objects on the ground that the matter set out in said proposed amendment is no defense in favor of the defendant as against the rights of the plaintiff. The defendant is sued as the terminal carrier, and the Court holds that under the provisions of the law regulating interstate commerce the alleged negligence of the shipper in his dealings with the initial carrier could not avail as a defense to the terminal carrier. To so hold would be to nullify the presumption which the law casts on the terminal carrier in an interstate shipment."

The defendant undertook to prove the improper loading, but the evidence was ruled out. The judgment was for the plaintiff, and the defendant appealed, raising three questions:

I. Was it error to refuse to allow the amendment?

It was error on the ground upon which it was based.
1, 2 It is true that under the general denial the defendant could have shown that the injury was not caused by the negligence of the defendant, but by the negligence of the consignor. This ruling necessarily excluded the evidence of improper loading. The rule is stated in the case of *Fertilizer Co. v. Railroad Co.*, 99 S. C., pp. 198, 199; 83 S. E., 36, 38:

"But as between consignor and a receiving carrier the fact must outweigh the recital. The consignor cannot conclusively prevail against the receiving carrier for 500 sacks simply because the bill of lading recited 500 sacks. The bill of lading raises in the consignor's favor the presumption that the car did have 500 sacks; but the carrier may show, the truth against the writing and against the presumption. *Phos. Co. v. Fert. Co.*, 94 S. C., 212; 77 S. E., 1012.

"The plaintiff here, though, is not the consignor; it paid the consignor's draft against 500 sacks, to which draft there was attached a bill of lading made and issued under the circumstances herein recited. The question now is: Did the peculiar bill of lading in this case at all modify the rights of the plaintiff, consignee?

The consignor accepted a bill of lading which did not contain an unequivocal admission of the contents of the car. That paper recites that there were 500 bags in the car; but there was marked upon its face a plain warning in the letters 'S. L. & C.' These characters are well understood by all parties, and especially by the plaintiff. They in effect mean that the Little Mountain Oil Mill & Fertilizer Company, called sometimes the shipper and sometimes the consignor, had loaded the car and counted the bags; the practice was encouraged and approved by the business public. The car thus loaded was sealed up by the

consignor, with the initial carrier's seal, and left thus standing on the consignor's side track.

"When the bill of lading went attached to the draft and was presented to the plaintiff, it carried notice to the plaintiff how the car was loaded.

"Under these circumstances the carrier is not estopped to deny to the plaintiff consignee that there were 500 sacks in the car; it never aforetime admitted that, expressly or impliedly, except by counsel in the progress of the trial; it has not misled the plaintiff.

"But the recital of the bill of lading that the car had 500 sacks of meal in it must carry some meaning, even though the consignor counted the sacks."

The rule as to shipper's load is the same as shipper's count. Where carload lots are taken on "shipper's load and count," there is a presumption, but it is only prima facie, and not conclusive.

The Federal Statute (Comp. St. § 8604k) is not in conflict with this. It reads:

"The carrier may also by inserting in the bill of lading the words 'shipper's weight, load, and count,' or other words of like purport, indicate that the goods were loaded by the shipper and the description of them made by him; and if such statement be true, the carrier shall not be liable for damages caused by the improper loading or by the nonreceipt or by the misdescription of the goods described in the bill of lading."

The exceptions that raise this question are sustained.

II What has been said disposes of the second question as to presumption.

III. The sixth exception states the third question and reads as follows:

"That his Honor erred in overruling motion for a new trial upon the ground that his Honor erred in charging the jury that in determining the market value of the auto-

mobiles in question they might take any sum between the wholesale price of such automobiles and the retail price of same; the error being that the charge in effect permitted the jury to award the plaintiff profits on the shipment in question."

The appellant complains that there is no evidence from which the market value could be determined. The evidence is full and clear. Briscoe Motor Company shipped to themselves this car. The title did not pass until the shipment arrived and the draft was paid. The Briscoe Motor Company did not part with the title until the goods had arrived at their destination and all damage had been done. They could confer no higher right than they had. On the day the draft was paid and before it was paid the shipper had the right to complete its contract of sale by delivering the carload of automobiles to the plaintiff. It lost its power to do so by the damage to the cars. It was entitled to receive from the plaintiff the contract price, plus the freight, and no more. The market price was fixed by the selling price already agreed upon. If the shipper had brought his action, he would have been entitled to recover from the railroad company just what the purchaser had already agreed to pay, less the value of the injured cars; that is, if his loss was not caused by his own negligence, but by negligence for which the defendant was responsible. The purchaser took the seller's place, and the purchaser can recover no more.

The exceptions that raise this question are sustained.

The judgment appealed from is reversed and the case is remanded for a new trial.